Filed 3/8/13  In re I.B. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re I.B., a Person Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E057087 |
| Plaintiff and Respondent, | (Super.Ct.No. J234629) |
| v. | OPINION |
| S.B., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Cheryl C. Kersey, Judge.  Reversed with directions.

Siobhan M. Bishop, under appointment by the Court of Appeal, for Defendant and Appellant.

Jean-Rene Basle, County Counsel, and Kristina M. Robb, Deputy County Counsel, for Plaintiff and Respondent.

1

I.B., a minor under the age of three, was declared a dependent after she suffered a broken elbow and ankle while in the custody of legal guardians appointed after I.B.'s mother was shot to death. Father was in custody on a parole violation, so it was alleged he failed to protect the minor and failed to provide for her. (Welf. & Inst. Code,[1] § 300, subds. (b), (g).) Father received and completed reunification services, but he tested positive for methamphetamine once and missed two drug tests early in the dependency, and drank two beers on Christmas Eve during the reunification period. Services were terminated and a section 366.26 hearing was set. Prior to the hearing, father filed a petition to modify the order setting the section 366.26 hearing (§ 388), demonstrating he had completed a new substance abuse program on his own and maintained a close relationship with the minor. The county agreed that the petition should be granted, but the court denied it based on the concerns of the minor's counsel that the minor needed stability and should remain with her half-brother. Father's parental rights were terminated and he appealed.

On appeal, father argues that (1) the denial of his section 388 petition was error and (2) his parental rights should not have been terminated based on a beneficial parent-child relationship. (§ 366.26, subd. (c)(1)(B)(i).) The San Bernardino County Children and Family Services (CFS) agrees that the juvenile court erred in denying the request to

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise stated.

modify the court order, which renders moot any remaining issue regarding the termination of parental rights. We reverse.

## BACKGROUND

On May 12, 2010, the mother of I.B., who was born in October 2008, was shot and killed. I.B.'s father, who was on parole at the time, was arrested the next day for being in the company of his brother-in-law, also a parolee, in violation of a parole condition that he not associate with other known parolees. The mother's sister, Rosa P. was appointed as the legal guardian of I.B. and her half-brother, Antonio H., on August 27 and August 23, 2010.

On August 28, 2010, the legal guardian and her fiancé Sergio C., took I.B. to the emergency room for injuries to her elbow and ankle. Examination revealed a supracondylar fracture of the elbow and a hairline fracture of the tibia. Rosa and Sergio's children disclosed that Sergio had picked I.B. up and dropped her on the ground, and eventually Sergio admitted he had thrown the minor onto her bed. Because the guardian's initial explanations were inconsistent with the injuries, it was determined that the injuries were inflicted nonaccidentally. I.B. and her half-brother, as well as Rosa and Sergio's children, were taken into protective custody.

At the initial detention hearing, mother's sister, the legal guardian, indicated there was no American Indian heritage. However, she had previously told one of I.B.'s

3

treating physicians that she and her family had native American heritage. [2] At a subsequent pretrial settlement conference hearing, father was directed to complete the ICWA-020 form regarding possible Indian heritage after he orally denied any. However, the form was not included in the record. There is no information in the record regarding the biological mother's possible Indian heritage.

An amended dependency petition was filed alleging physical abuse (§ 300, subd. (a)), neglect (§ 300, subd. (b)), severe physical abuse of a child under five (§ 300, subd. (e)) and substantial risk to a sibling (§ 300, subd. (j)), based on the conduct of the guardians. As against father, the petition alleged he failed to protect I.B. (§ 300, subd. (b)), and failed to provide care and support for the minor. (§ 300, subd. (g).)

An addendum to the social worker's report, prepared for the jurisdictional hearing, indicated father had an extensive criminal history, between 2003 and 2009. Documents submitted at a later hearing showed father had three misdemeanor convictions for disorderly conduct (Pen. Code, § 647, subd. (f)), a misdemeanor conviction for spousal abuse (Pen. Code, §243, subd. (e)(1)), one misdemeanor conviction for possession of marijuana (Health & Saf. Code, § 11375, subd. (b)), one misdemeanor conviction for possession of controlled substances (Health & Saf. Code, § 11377, subd. (a)), and one

---

[2] One report prepared by Dr. Esteban Poni noted that a half-sister of I.B. had congenital hip problems raising the possibility of congenital musculoskeletal disease that needed to be ruled out. The doctor asked Rosa (the guardian) about her heritage and was informed by Rosa that her family was descended from Native American Indians. The doctor concluded there was a possibility that I.B.'s fractures could be accidental.

felony conviction for spousal abuse.  (Pen. Code, § 273.5, subd. (a).)  Father was released from his most recent incarceration (for violating his parole) on November 8, 2010.

On March 25, 2011, at the jurisdictional hearing, father submitted on the basis of the social worker's reports.  As to father, the court made true findings as to the allegation that he failed to protect I.B.  (§ 300, subd. (b)), dismissing the allegation that he failed to provide for her.  (§ 300, subd. (g).)  The minor was declared a dependent, and was removed from the custody of the legal guardian and father.  The court determined that father was merely an alleged father, but granted him reunification services nonetheless.[3]

The minor was in two different placements prior to the jurisdictional hearing, where her temper tantrums, biting, screaming, and head-banging were noted.  On June 2, 2011, the minor and her half-brother were placed with their maternal aunt, C.F.  Information contained in the six-month review report indicated that father had lived with mother for five years, including the time of the minor's conception, although his name was not on her birth certificate.  Following father's release from custody, he lived with his mother and two sisters and maintained employment.  On June 21, 2011, he tested positive for methamphetamine in a random drug test, and missed a test on July 8, 2011.  All other random drug tests during the six-month period were negative for any substances.

---

[3] As to I.B.'s half-brother, Antonio, no services were ordered for his alleged father because CFS could not locate him.  A section 366.26 hearing was ordered as to Antonio.

In all other respects, father progressed well in his reunification program. His home was well kept, he visited regularly with I.B. and her half-brother, interacting with them appropriately. He regularly attended the batterer's program and an 18-month Driving Under the Influence program. Father was expected to be discharged early from parole.[4] As a result, father's visitation was increased to unsupervised visits for two hours weekly between April and August of 2011, when father was given unsupervised overnight visits on weekends. Father always interacted well with the minor and her half-brother. On September 26, 2011, the court conducted the six-month review hearing and extended services for father, authorizing CFS to return I.B. to her father's custody on family maintenance by packet when deemed appropriate.

By November 30, 2011, father had completed the outpatient drug program and the batterer's program, and was participating in the remaining court-ordered services. Father's counselors and treatment supervisors indicated father had progressed well.

However, C.F., the maternal aunt with whom I.B. was currently placed, reported that on Christmas Eve 2011, father called and he sounded intoxicated.[5] Although father missed two additional drug tests since the date of the review hearing because he forgot to call, he tested regularly otherwise, and all tests were negative for drugs and alcohol.

_____

[4] He was discharged from parole on February 17, 2012.
[5] Father and other relatives present at father's residence on Christmas Eve testified that father did have two beers, but that he was not intoxicated, and that no one called the caregiver. No telephone records were introduced to show whether or not a call was actually made.

Father's therapist reported father had made gains and benefited from therapy, while the parent-child interactive therapy therapist reported she was satisfied with father's progress in managing I.B.'s tantrums. On January 5, 2012, the social worker also noticed father appeared to be slimmer, which father attributed to the fact that his recent employment involved unloading heavy containers for nine or 10 hours per day. Because of the allegation that father was inebriated on Christmas Eve, and because he appeared to be slimmer and had missed two additional drug tests, the social worker suspected he was abusing substances.

On April 13, 2012, the court conducted a hearing combining the 12-month status review with father's request to change a prior court order, seeking presumed father status. (§ 388.) The court granted father's request to change father's status from "alleged" father to "presumed" father. It then found that father failed to regularly participate and to progress in the court-ordered reunification services, terminated father's services, and set a hearing pursuant to section 366.26.

On August 1, 2012, CFS submitted a report for the section 366.26 hearing. The report noted that I.B. is always happy to see her father, who does a good job engaging and interacting with her. On August 8, 2012, father filed a second section 388 petition to return custody or reinstate services. The petition alleged that despite drinking alcohol on Christmas Eve 2011, he re-enrolled in a substance abuse program and parenting classes on his own immediately thereafter, and drug tested regularly with negative results.

In response to father's section 388 petition, CFS agreed that the court should return the minor to father's custody. The report noted that father took it upon himself to enroll in another outpatient program and successfully completed it with positive marks, consistently tested negative, maintained a stable home and steady employment. The report further noted that although there were three missed visits, they were attributable to the caretaker's health or transportation trouble. The visits were appropriate, the minor referred to father as "Daddy," and she always hugged him at the end of the visit. In fact, I.B. stated she wanted to live with her daddy. CFS therefore recommended that maintenance services be granted to father, and that the court find there were changed circumstances.

On September 4, 2012, at the hearing on father's section 388 petition, minor's counsel opposed the recommendation to return the minor to her father because the current caregivers were the parental figures for I.B., she was placed with her half-sibling, and she needed permanency and stability. The court denied the petition finding it would not be in the child's interest to return her to her father because the court did not want the minor to lose her brother after losing both parents.

On September 6, 2012, the court conducted a contested selection and implementation hearing pursuant to section 366.26. The social worker testified about the positive quality of the visits between father and I.B., and how she appeared to have a close bond with him, calling him "Daddy" and stating she wanted to stay with him. The decision to recommend adoption was a difficult one for the social worker because father

8

visited constantly and finished everything. However, in light of minor's strong statement at the section 388 hearing about the minor's need for stability, and father's missed drug tests, the social worker recommended adoption.

After hearing all of the evidence, the court ruled that it was not "appropriate at this time to take a child, who is four, who has lost her mother and father to then take them [*sic*] away . . . from her brother too. That should be the most important thing." The court found by clear and convincing evidence that the minor was adoptable, and terminated the parental rights of father   Father timely appealed.

**DISCUSSION**

1.      **The Juvenile Court Abused Its Discretion in Denying Father's Section 388 Petition.**

Father argues that the court erred in denying his section 388 petition and CFS agrees that father met his two-pronged burden of showing changed circumstances and that modification of the prior order was in the best interests of the minor. We agree.

A juvenile court order may be changed, modified or set aside under section 388 if the petitioner establishes by a preponderance of the evidence that (1) new evidence or changed circumstances exist, and (2) the proposed change would promote the best interests of the child. (*In re Stephanie M*. (1994) 7 Cal.4th 295, 316-317.) The parent bears the burden to show both a legitimate change of circumstances and that undoing the prior order would be in the best interest of the child. (*In re Kimberly F*. (1997) 56 Cal.App.4th 519, 529 (*Kimberly F*.).) Generally, the petitioner must show by a

9

preponderance of the evidence that the child's welfare requires the modification sought. (*In re B.D.* (2008) 159 Cal.App.4th 1218, 1228.) The petition is addressed to the sound discretion of the juvenile court, and its decision will not be overturned on appeal in the absence of a clear abuse of discretion. (*Stephanie M., supra,* 7 Cal.4th at p. 318; *In re S.J.* (2008) 167 Cal.App.4th 953, 959.)

The best interests standard is not a simplistic comparison between the natural parent's and the caretaker's households. (*Kimberly F., supra,* 56 Cal.App.4th at p. 530.) Thus, the second factor outlined in *Kimberly F.* evaluates the strength of the existing bond between the parent and child, which is considered so potentially important that it can even derail adoption as a permanent plan. (*Id.* at p. 531.) In evaluating this factor, the court considers the correlative bond between the child and the caretakers, although the bond to the caretaker cannot be dispositive. (*In re D.R.* (2011) 193 Cal.App.4th 1494, 1512.)

The first *Kimberly F.* factor, the seriousness of the problem that led to the dependency was linked to physical abuse inflicted by the minor's guardians. Father was incarcerated, so the only allegations pertaining to father related to his failure to protect the minor against harm inflicted by the legal guardians and his failure to provide for her. In essence, father was a nonoffending, noncustodial parent who was ordered to participate in reunification services due to his past record. Father's participation in parent education, counseling, and parent-child interactive therapy, addressed his ability to protect and provide for the child, as well as to deal with her serious behavioral issues.

Father had no arrests or other criminal law contacts during the entirety of the reunification period, and was discharged from parole. No issue was raised at the hearing that he did not address the seriousness of the problem that led to the dependency and no argument was made in the trial court or on appeal that denial of the section 388 was required based on this factor. This factor favors the father.

The second *Kimberly F.* factor requires the court to evaluate the strength of the relative bonds between the dependent child and his or her parent, compared with the strength of the child's bond to his or her present caretakers. (*Kimberly F., supra,* 56 Cal.App.4th at p. 531.) In considering this factor, the bond to the caretaker cannot be dispositive, lest it create its own self-fulfilling prophecy. (*Ibid.*)

The bond between the father and I.B. was strong and positive, as conceded by CFS in its response to the 388 petition, as well as in its brief on appeal. I.B. referred to her father as "Daddy," always gave him a hug when the visits ended, and told the social worker that she wanted to live with him. He was able to maintain steady employment and a stable home for a significant amount of time, and had significant family support from his mother and sisters. During the reunification period, I.B.'s half-brother also participated in visits, and father was able to give attention to both children, equally.

On the other hand, there was no evidence presented at the hearing to show that the correlative bond between I.B. and her caretaker was so strong that the disruption of that relationship would cause I.B. emotional harm. (*In re Jasmon O.* (1994) 8 Cal.4th 398, 417-419.) This factor also favors the father.

11

The third *Kimberly F.* factor relates to the degree to which the problem may be easily removed or ameliorate and the degree to which it actually has been. (*Kimberly F., supra,* 56 Cal.App.4th at pp. 531-532.) Although the problem referred to in *Kimberly F.* relates to the problem that led to the dependency, the problem in this case was father's past record for using drugs. In reviewing this factor, we observe that although his criminal record included two misdemeanor drug-related convictions between 2003 and 2009, neither this record nor any alleged substance abuse was the cause of the dependency, nor would it, without more, have supported a finding of jurisdiction. (*In re Destiny S.* (2012) 210 Cal.App.4th 999, 1003.)

Nevertheless, father completed not one, but two drug treatment programs, in addition to other programs, as part of the court-ordered treatment program in order to reunify with his daughter. Although father admitted using methamphetamine once in the early stages of the reunification plan, and drank two beers on Christmas Eve in 2011, he immediately reengaged in outpatient treatment on his own, and successfully completed a second program. All drug tests (save those he missed prior to the termination of services) were negative for any intoxicants. CFS agrees that the completion of the programs and subsequent negative drug tests were sufficient to show changed circumstances. Given the fact that substance abuse was not alleged as a basis for the dependency, father's completion of the second program removed or ameliorated that concern.

In any event, the father's substance abuse was not the basis for the court's denial of relief. Instead, the court based its decision that modification of the prior order was not

12

in I.B.'s interest because she had already lost her mom, she had lost her father because he had been unable to parent her, and granting the petition would make her lose her brother and the stability of her current placement. None of these factors are supported by the record. Although I.B. had lost her mother, return of custody to the father, or resumption of reunification efforts, would prevent the "loss" of her father.[6] There is no indication that father would prevent I.B. from maintaining a relationship with her half-brother, who was in the process of being adopted by a maternal relative, if the section 388 petition were granted.

The denial of the petition constituted an abuse of discretion.

## 2.    Reversal of the Order Denying the Section 388 Petition Renders Moot the Orders Made at the Section 366.26 Hearing.

By reversing the order on the section 388 petition, which sought the modification of the order setting the section 366.26, that order has been effectively vacated by our decision. (See *In re Sean E.* (1992) 3 Cal.App.4th 1594, 1599 [finding of changed circumstances render referral for § 366.26 hearing a nullity].) It is necessary to restore all parties to their prior positions, so the reversal of the order on the section 388 petition requires the reversal of the orders terminating parental rights. (*In re Esperanza C.* (2008) 165 Cal.App.4th 1042, 1061-1062; *In re Lauren R.* (2007) 148 Cal.App.4th 841, 861.)

---

[6] In this respect, the court predetermined it would terminate parental rights.

13

**3.    Additional Matters to Consider on Remand.**

In the reports attached to the detention report, there is an indication that the mother and her relatives have Native American ancestry. However, at the jurisdictional hearing, mother's sister, the legal guardian of the minor, who was the individual who provided the information about the possible Indian ancestry, denied it. The court found that the Indian Child Welfare Act did not apply at the jurisdiction hearing.

Because of this discrepancy, and in light of our reversal, we direct the court to order further investigation into the possibility that the minor may be an Indian child.

## DISPOSITION

The judgment is reversed. On remand, the juvenile court shall direct CFS to conduct further investigation as to whether or not the minor is an Indian child.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
P. J.

We concur:

RICHLI
J.

MILLER
J.

14